IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-01857-PAB-MJW

KATHY "CARGO" RODEMAN,

    Plaintiff,

v.

ERIK FOSTER, individually and in his official capacity as an Officer with the Oak Creek,
    Colorado Police Department, and
THE TOWN OF OAK CREEK, COLORADO,

    Defendants.
_____

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT**
_____

    This matter is before the Court on defendants' motion for summary judgment [Docket No. 46]. The motion is fully briefed and ripe for disposition. For the following reasons, the Court will grant the motion in part and deny it in part.

**I. JURISDICTION**

    Plaintiff asserts claims under 42 U.S.C. § 1983, as well as the Fourth Amendment of the United States Constitution. The Court therefore has federal-question jurisdiction over these claims pursuant to 28 U.S.C. § 1331. Plaintiff also asserts claims under Colorado law, over which the Court exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**II. BACKGROUND**

    On July 18, 2008, plaintiff Kathy Rodeman went to the Colorado Bar in Oak Creek, Colorado with two friends, Shoshanna Montoya and Tashena Montoya. While at

the bar, plaintiff had three drinks. When the three women left the bar and went to plaintiff's car, Sgt. Erik Foster of the Oak Creek Police Department watched them through his binoculars.

The events that followed are disputed. Sgt. Foster remembers seeing plaintiff fumble with the car's door handle, which plaintiff denies. Next, although both parties agree that Sgt. Foster followed plaintiff's car out of the Colorado Bar parking lot, they disagree about what Sgt. Foster observed as he followed her car. According to Sgt. Foster, plaintiff exceeded the 25 mile per hour speed limit and failed to signal for a turn. On the other hand, plaintiff claims she did not exceed the speed limit and that she signaled every turn on the way from the Colorado Bar to her house. One of plaintiff's passengers, Shoshanna Montoya, also claims plaintiff signaled every turn.

According to Sgt. Foster, he turned on his patrol car's lights while following plaintiff's car in order to initiate a traffic stop, and plaintiff responded by increasing her speed and pulling into her driveway. Plaintiff contradicts this account, claiming that she was aware that Sgt. Foster was following her, but that she did not increase her speed and that he did not activate his lights until after she had pulled into her driveway.[1]

---

[1] Defendants contend that plaintiff failed to respond to requests for admission within 30 days of service, and thus, pursuant to Fed. R. Civ. P. 36(a)(3), has admitted that Sgt. Foster turned on his lights while he was following her. *See* Docket No. 72 at 2 n.1. Defendants explain that they sent the requests for admission to plaintiff on December 2, 2009, and that "[d]espite being dated December 31, 2009, the responses were faxed on January 12, 2010." *Id.* The exhibit attached to defendants' reply brief shows, however, that plaintiff's attorney faxed the responses on January 12, 2010 with a cover letter stating that he also mailed them on December 31, 2009. Docket No. 72-1 at 2. The response to the requests for admission was signed by plaintiff on December 15, 2009 and is notarized. The certificate of service to the response states that the responses were sent by U.S. Mail on December 31, 2009. Docket No. 72-1 at 6. Under the circumstances, the Court sees no reason to believe that the responses were late and

Shoshanna Montoya also recalls Sgt. Foster activating his lights after he pulled in behind plaintiff's parked car.

Plaintiff got out of her car and told her two passengers to "get in the house." Docket No. 46-4 at 3. The three women ran into the house, despite Sgt. Foster shouting for them to get back into the car. Sgt. Foster's personal video recorder ("VIDMIC") shows Sgt. Foster ordering the women to get back in the car, but then the recorder cuts off. Before entering the house, Sgt. Foster radioed dispatch to report that he was being attacked by five people. Sgt. Foster followed the women to the doorway. According to Shoshanna Montoya, she was the last person to enter the house, and after she entered the house, she placed her foot on the floor behind the door to keep Sgt. Foster from pushing it open. Sgt. Foster nonetheless pushed the door open and entered. In contrast, Sgt. Foster claims that he was able to get part of his body, including his left foot, between the door jamb and the front door. He claims that Shoshanna Montoya then threw her weight into the door and repeatedly slammed Sgt. Foster between the door and the door jamb.

Sgt. Foster was eventually able to enter the residence and followed Shoshanna Montoya to a back bedroom where plaintiff and Tashena Montoya were located. After entering the house, Sgt. Foster realized his VIDMIC was not turned on and reactivated it. Sgt. Foster ordered plaintiff to stand up and turn around, but plaintiff called 911 to request another officer on the scene. Sgt. Foster contacted dispatch on his radio and advised dispatch that plaintiff was calling and to take her call. Plaintiff spoke with the

---

finds that this matter is not admitted pursuant to Fed. R. Civ. P. 36(a)(3).

dispatcher, explaining that Sgt. Foster entered her house without a warrant and that she did not know why he was there.

Sgt. Foster repeatedly asked plaintiff to stand up and, when she did not comply, took hold of her arm. Plaintiff pulled away from Sgt. Foster's grip and continued to ask for another officer. Throughout plaintiff and Sgt. Foster's interaction, the Montoya sisters were present in the room, often screaming loudly. Eventually, Sgt. Foster advised plaintiff that he would use his TASER on her if she failed to comply and ordered her several times to turn around. Plaintiff refused to comply, and Foster fired his TASER at plaintiff. The TASER was ineffectual, however, since apparently only one of the TASER's prongs made contact. Foster then activated the TASER while pressing it to plaintiff's shoulder. Plaintiff subsequently complied and Foster took the three women into custody.

After Sgt. Foster took the three women out of the house, Oak Creek Police Officer Eileen Rossi, who was off duty, responded to the scene. Officer Rossi took custody of the women and Sgt. Foster returned to plaintiff's house to perform a protective sweep. During his sweep, Sgt. Foster observed marijuana in plain view and also evidence of its use. After her arrest, plaintiff took a breath test and her blood alcohol level was 0.102. Plaintiff was charged with driving under the influence, driving under the influence per se, eluding, resisting arrest, obstructing a peace officer, and failure to signal for a turn.

### III.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & Cnty. of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

**IV. DISCUSSION**

Plaintiff originally asserted twelve claims for relief against Sgt. Foster, the town of Oak Creek, Russell Caterinicchio (the Oak Creek Police Chief), and several town board members. *See* Docket No. 1-1. Several of these claims were dismissed by stipulation. *See* Docket No. 66. Plaintiff's remaining federal claims both allege violations of 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.[2] Plaintiff is

---

[2] Plaintiff's complaint also appears to assert an Eighth Amendment claim of "cruel and unusual punishment." *See* Docket No. 1-1 at 11, ¶ 88. As defendants point out in their motion, the Eighth Amendment only applies to constitutional violations occurring after an individual is convicted of a crime. *See* Docket No. 46 at 17. As plaintiff does not discuss her Eighth Amendment claim in her response to defendants' motion, *see* Docket No. 53, nor was this claim included in the parties' final pretrial order, *see* Docket

also pursuing state law claims for assault, battery, trespass, false imprisonment, false arrest, and outrageous conduct against Sgt. Foster, and seeks respondeat superior liability against the town of Oak Creek for these torts.

### A. Unreasonable Search and Seizure

#### 1. Illegal Entry

Plaintiff's first federal claim asserts that Sgt. Foster violated her Fourth Amendment[3] rights and 42 U.S.C. § 1983 when he entered her home without a warrant in order to arrest her. In response, Sgt. Foster asserts the defense of qualified immunity and argues that his entry to the home was justified by probable cause and exigent circumstances. Sergeant Foster asserts that he is entitled to qualified immunity on all of plaintiff's Fourth Amendment claims. Docket No. 46 at 20. Public officers are entitled to qualified immunity "to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Where a § 1983 defendant raises the defense of qualified immunity, the burden shifts to plaintiff to show that "(1) that the defendant violated his constitutional or statutory rights, and (2) that the constitutional right was clearly established at the time of the alleged unlawful activity." *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199

---

No. 62 at 2-3, the Court finds plaintiff has abandoned this claim. *See Frontrange Solutions USA, Inc. v. Newroad Software, Inc.*, 505 F. Supp. 2d 821, 837-38 (D. Colo. 2007).

[3] The Fourth Amendment applies to state actors, like Sgt. Foster, by way of incorporation into the due process clause of the Fourteenth Amendment. *See United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). For ease of reference going forward, the Court will refer only to the Fourth Amendment.

(10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815-16 (2009)).  The court may examine either of these two prongs first, depending on "the circumstances in the particular case at hand."  *Id.* (quoting *Pearson*, 129 S.Ct. at 817-18).  "If the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity."  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).  If the plaintiff does satisfy her burden, then the burden shifts back to the defendant who must show that no material dispute of fact exists and he is entitled to judgement as a matter of law.  *Id.*  However, where "the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be 'properly denied.'"  *Id.* (quoting *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir. 1991)).

Sgt. Foster did not have a warrant for plaintiff's arrest; however, his entry into her home could still be justified both if he had probable cause to arrest her before he entered the house and there were exigent circumstances.  *See United States v. Aquino*, 836 F.2d 1268, 1272 (10th Cir. 1988) ("the test in this circuit requires probable cause and exigent circumstances" for a warrantless home entry).  Thus, before turning to the question of exigency, the Court will examine whether Sgt. Foster had probable cause to arrest plaintiff or her companions, and if so, for what offenses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (warrantless arrest violates the Fourth Amendment unless supported by probable cause).  "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that

the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quotations omitted).

Defendants first submit that Sgt. Foster observed plaintiff exit a bar, fumble with her door handle, fail to signal, and speed, and therefore he had at least reasonable suspicion under *Terry v. Ohio* to stop and investigate her for drunk driving. *See United States v. Villagrana-Flores*, 467 F.3d 1269, 1275 (10th Cir. 2006) (a Terry stop requires a reasonable and articulable suspicion that the person seized is engaged in criminal activity). What Sgt. Foster saw while watching plaintiff enter her car and while following plaintiff is, however, disputed. Plaintiff testified at her deposition that she did not fumble with her door, did not fail to signal, and did not speed. *See* Docket No. 53-2 at 7-8. Shoshanna Montoya stated in her affidavit that plaintiff signaled for every turn. *See* Docket No. 53-4 at 1. Defendants respond that plaintiff's version of events is "incredible." Docket No. 72 at 3. A jury may well find plaintiff's story unbelievable, but in assessing defendants' motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Moreover, plaintiff's version of the events is not discredited by objective evidence. Although the evidence includes a videotape of the arrest, the videotape only depicts the arrest itself, not plaintiff's driving or the events transpiring immediately before Sgt. Foster entered the home. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) (finding plaintiff's version of events was "blatantly contradicted" by videotape of incident); *Rhoads v. Miller*, 352 F. App'x 289, 291 (10th Cir. 2009) (declining to discredit plaintiff where only other witnesses' testimony contradicted his version of the facts). Therefore, the facts necessary to determine whether Sgt. Foster

had reasonable suspicion to stop and investigate plaintiff for drunk driving remain disputed.

Second, defendants contend that Sgt. Foster had probable cause to arrest plaintiff for vehicular eluding. Vehicular eluding under Colorado law requires that the officer attempting to make a traffic stop have "reasonable grounds to believe" the eluder has "violated a state law or municipal ordinance." C.R.S. § 42-4-1413 (designating the offense as a class 2 misdemeanor). Thus, as it is disputed whether Sgt. Foster observed any traffic violations or had any reason to suspect plaintiff of violating the law, it is also disputed whether Sgt. Foster had probable cause to arrest her for vehicular eluding.

Finally, defendants contend that Sgt. Foster had probable cause to arrest Shoshanna Montoya for assaulting him because Shoshanna slammed him in the front door of plaintiff's home. Shoshanna Montoya's affidavit states that she did not slam Sgt. Foster in the door, but rather placed her foot in the path of the front door to keep it from being pushed open and tried to close the door as Sgt. Foster pushed his way in. Docket No. 53-4 at 2. Defendants contend that, at the very least, Shoshanna Montoya's affidavit does not dispute that she closed the door on Sgt. Foster while he was between the door and the door jamb. Docket No. 72 at 3. Even assuming that Sgt. Foster had probable cause to arrest Shoshanna Montoya for assault, according to Sgt. Foster, the assault occurred after Sgt. Foster had decided to enter the house and crossed its threshold and therefore cannot provide justification in and of itself for Sgt. Foster's decision to enter the house.

Sgt. Foster's right to qualified immunity notwithstanding, defendants are not entitled to summary judgment on plaintiff's illegal entry claim.  Taken in the light most favorable to plaintiff, the facts she has adduced show that Sgt. Foster entered her home without the requisite probable cause, in violation of her Fourth Amendment rights.  The right to be free from warrantless entry into the home and the right to be free from arrest without probable cause are both clearly established.  *See Payton v. New York*, 445 U.S. 573, 590 (1980); *Tenn. v. Garner,* 471 U.S. 1 (1985).  The burden, therefore, shifts back to the defendants to show that no genuine issue of material fact exists and that defendants are entitled to summary judgment as a matter of law.  *See Olsen*, 312 F.3d at 1312 (explaining burden shifting framework in qualified immunity cases).  Here, unresolved disputes of material fact remain as to whether Sgt. Foster had probable cause to arrest plaintiff or her companions before entering her home.  *See id.*  Therefore, the Court need not reach the question of exigency and will deny defendants' summary judgment motion as to the unlawful search and seizure.

### 2. Protective Sweep

Plaintiff additionally claims that Sgt. Foster conducted a search in violation of the Fourth Amendment when he performed a "protective sweep" of her home after arresting her.  A "protective sweep" is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990).  This type of search, however, requires both that the arrest be lawful and that articulable facts indicate a threat to officer safety.  *See id.* at 330, 332-33; *United States v. Torres-Castro*, 470 F.3d 992, 996 (10th Cir. 2006) (protective sweeps are only permitted incident to an arrest).  As explained above,

disputes of fact remain as to whether Sgt. Foster had probable cause to arrest plaintiff and, thus, whether her arrest was lawful. Moreover, the three occupants were under arrest outside of the house at the time of the protective sweep and defendants have not articulated a reason to think there was any threat to officer safety by anyone else suspected of being in the house. Therefore, defendants are not entitled to summary judgment as to the lawfulness of the protective sweep.

### B. Excessive Force

Plaintiff asserts a claim for excessive force, arguing that Sgt. Foster unreasonably seized her in violation of her Fourth Amendment rights when he tased and arrested her inside her home. In response, Sgt. Foster asserts the defense of qualified immunity. The relevant inquiry is whether the force used by Sgt. Foster was "reasonable under the facts and circumstances presented." *See Fogarty v. Gallegos*, 523 F.3d 1147, 1159 (10th Cir. 2008) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). On summary judgment, once the Court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, the reasonableness" determination becomes "a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). The facts pertaining to Sgt. Foster's actual arrest of plaintiff and the force he used to effectuate the arrest are far less disputed than the earlier events since Sgt. Foster activated his personal video recorder after entering the house and the record includes the videotape of the remainder of the incident. *See id.* at 380-81 (instructing courts on summary judgment to view "the facts in the light depicted by the videotape" of an incident).

"A court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult situations." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1287-88 (10th Cir. 2008) (quoting *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005)).  When evaluating the reasonableness of the force used during a seizure, courts consider a series of factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  The Court's evaluation of plaintiff's excessive force claim is unaffected by the remaining material dispute of fact about whether Sgt. Foster had probable cause to arrest plaintiff, as "the two inquiries are entirely independent."  *See Fogarty*, 523 F.3d at 1160.  "[I]n a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force." *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007) (en banc).

Turning to the *Graham* factors, the Court first considers the severity of the crime at issue.  Here, which crimes Sgt. Foster could have reasonably suspected plaintiff of committing is disputed and depends on both what traffic violations he actually observed and when he turned on his police vehicle lights.  In any case, even if Sgt. Foster only suspected plaintiff of having committed minor traffic violations, the second and third *Graham* factors – looking at the suspect's resistance and the officer's safety concerns –

outweigh this factor and lead the Court to find that the use of force was reasonable. *See Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007).[4] As in *Mecham*, in light of Sgt. Foster's video recording of the arrest, the material facts related to these two factors are not in dispute. *See id.* at 1203-04; Docket No. 90 (videotape).

The second *Graham* factor looks at whether the suspect posed an immediate threat to the safety of the arresting officer or others. *Graham*, 490 U.S. at 396. Here, Sgt. Foster was objectively reasonable in concluding that plaintiff posed an immediate safety risk. First, even taking plaintiff's version of the facts as true, Shoshanna Montoya had physically resisted Sgt. Foster's entry into the house by trying to close the door on him as he entered. *See* Docket No. 53-4 at 2. Second, as the video recording of the incident and photographs of plaintiff's house demonstrate, *see* Docket No. 46-8, Sgt. Foster effectuated the arrest in a cluttered, cramped bedroom. Plaintiff was actively resisting arrest, as explained below, and the Montoya sisters were screaming and yelling at Sgt. Foster. In the context of the chaotic encounter, therefore, Sgt. Foster was reasonable in believing that force was necessary to ensure his safety. *See Mecham*, 500 F.3d at 1205.

---

[4] In *Mecham*, the court considered a factual situation analogous to the instant case, also involving minor traffic violations and a resistant suspect. *See* 500 F.3d at 1202-03. There, the court noted that "the traffic stop was justified at its inception." 500 F.3d at 1204. Here, it is disputed whether Sgt. Foster had the requisite quantum of suspicion to arrest plaintiff. Nevertheless, the *Mecham* court did not hold that the lawfulness of the arrest was a prerequisite to its finding that the officer's use of force was reasonable, *see id.*, and *Fogarty* instructs that the two inquiries are entirely independent. *See* 523 F.3d at 1160. In *Fogarty*, the court assumed that plaintiff had in fact committed the crime defendants contend he was suspected of for purposes of its excessive force analysis, despite the court's finding that the arresting officers did not have probable cause. *See id.*

As to the third *Graham* factor, the Court finds that plaintiff was actively resisting arrest. *See Graham*, 490 U.S. at 396. The video shows Sgt. Foster repeatedly asking plaintiff to stand up and turn around, advising her that he was "giving her a lawful order,"[5] and warning her that he would tase her if she continued to refuse his orders. *See* Docket No. 90. The video also shows plaintiff refusing to comply and actively jerking away from Sgt. Foster's grip after he grabbed her arm and took out handcuffs. *See id.* Despite these facts, plaintiff characterizes her resistance as "passive," s*ee* Docket No. 53 at 9-10, a characterization that contradicts the court's analysis in *Mecham*. There, the Tenth Circuit found that the third *Graham* factor weighed in favor of reasonableness despite the plaintiff's simply refusing to obey orders or get out of her car. *See Mecham*, 500 F.3d at 1204-05. Here, Ms. Rodeman resisted arrest more actively than the plaintiff in *Mecham*, as Ms. Rodeman physically tried to pull away from Sgt. Foster as he tried to place her in handcuffs. *See id.* Moreover, this is not a case where plaintiff was tased without warning. *Cf. Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665-67 (10th Cir. 2010) (finding TASER use objectively unreasonable where officer discharged TASER at suspect's back without warning); *Casey v. City of Federal Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007) (tackle and use of TASER unreasonable where officer never told suspect he was under arrest and never advised him to stop resisting). Sgt. Foster gave plaintiff several warnings and plaintiff had ample

---

[5] Plaintiff contends that Sgt. Foster never told plaintiff she was under arrest prior to tasing her. *See* Docket No. 53 at 12. It is indisputed that Sgt. Foster warned plaintiff several times before activating his TASER. Although it is also true that the transcript of the incident does not include Sgt. Foster's statement "I am giving you a lawful order," *see* Docket No. 46-6, this statement is clearly audible in the video recording in between Sgt. Foster's repeated commands to "turn around." *See* Docket No. 90.

opportunity to comply with his commands, but still refused to cooperate. Sgt. Foster's decision to deploy his TASER to force plaintiff to comply was, therefore, objectively reasonable.

Having found that Sgt. Foster did not violate plaintiff's constitutional rights by seizing her with excessive force, the Court is not required to reach the question of whether the right identified by plaintiff was "clearly established" at the time. However, in the alternative, even if Sgt. Foster did violate plaintiff's constitutional right to be free from unreasonable seizures, plaintiff has failed to establish a violation of a clearly established right.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Casey,* 509 F.3d at 1283-84 (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001)); *see also Anderson v. Creighton,* 483 U.S. 635, 640 (1987). As the Tenth Circuit has pointed out, the "difficult part of this inquiry is identifying the level of generality at which the constitutional right must be 'clearly established.'" *Casey,* 509 F.3d at 1284. It was clearly established at the time Sgt. Foster tased plaintiff that individuals had a right to be free of excessive force. *See Graham*, 490 U.S. at 395. But "the Supreme Court has held that *Graham*'s 'general proposition . . . is not enough' to turn *all* uses of excessive force into violations of clearly established law." *Casey*, 509 F.3d at 1284 (quoting *Saucier*, 533 U.S. at 201-02) (emphasis in original). "In other words, the fact that it is clear that any unreasonable use of force is unconstitutional does not mean it is always clear *which* uses of force are unreasonable." *Id.* (emphasis in original).

"A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline,* 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake,* 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted).[6] However, "contrary authority from other circuits does not preclude a finding that the law in this circuit was clearly established, if the contrary authority can be distinguished." *Currier v. Doran,* 242 F.3d 905, 923 (10th Cir. 2001).

Furthermore, factual novelty alone will not automatically provide a state official with the protections of qualified immunity. *See Casey,* 509 F.3d at 1284 (noting that in the Fourth Amendment context, "there will almost never be a previously published opinion involving exactly the same circumstances"); *Blake,* 469 F.3d at 914 ("[A] general constitutional rule that has already been established can apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." (internal quotation marks and alteration marks

---

[6] In *Prison Legal News, Inc. v. Simmons*, 401 F. Supp. 2d 1181, 1189-90 (D. Kan. 2005), the court noted that the quoted language "from other circuits" appears to be a misquote of the Tenth Circuit's decision in *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), where the court used the language "from other courts." That misquote first appeared in *Murrell v. School District No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999) and has since appeared repeatedly in Tenth Circuit cases. The *Prison Legal News* court, though concluding that the "misquote was merely a scrivener's error" and was not meant as a substantive change to the legal standard, added that "the fact that this error has not been discussed in a reported case from the Tenth Circuit suggests the error may not be very significant." 401 F. Supp. 2d at 1191. "In other words, although the circuit may be willing to consider cases from courts beyond the federal appellate courts, the focus should normally be on cases decided by other circuits." *Id.*

omitted)).[7] The Tenth Circuit employs a "sliding scale" in identifying clearly established law: "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey,* 509 F.3d at 1284 (quoting *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004)).

Qualified immunity provides "ample room for mistaken judgments." *Malley v. Briggs*, 475 U.S. 335, 343 (1986); *cf. Casey*, 509 F.3d at 1286 ("[A]n officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are 'no substantial grounds for a reasonable officer to conclude that there was legitimate justification' for acting as she did.") (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1197 (10th Cir. 2001)). "[D]efendants are required to make 'reasonable applications of the prevailing law to their own circumstances.'" *Currier*, 242 F.3d at 923 (quoting *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999)). Moreover, even if other police officers may have taken a different approach in the same circumstances, that does not clearly establish that Sgt. Foster's approach was objectively unreasonable. *See Whitington v. Lawson*, No. 06-cv-00759-LTB-CBS, 2009 WL 3497791, at *3 (D. Colo. Oct. 29, 2009) ("Qualified immunity exists so long as reasonable officials in the same situation as the defendants could disagree on the appropriate course of action to follow.") (citing *Holland*, 268 F.3d at 1186). The Court

---

[7] *See Buck,* 549 F.3d at 1290 ("The law is clearly established either if courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct at issue." (internal quotation marks and alteration marks omitted)).

finds that plaintiff has not established that Sgt. Foster "must have known that he could not behave as [plaintiff] alleges that [he] did." *Casey*, 509 F.3d at 1284.

Plaintiff has identified no cases or clearly established principles that would have put Sgt. Foster on notice that his conduct was a violation of clearly established law and the Court is aware of none. At the time Sgt. Foster arrested plaintiff, the principal Tenth Circuit precedent discussing use of TASERs was *Casey*. *See* 509 F.3d at 1284. In *Casey*, officers tased a misdemeanant plaintiff without warning in a public place. *See id.* Although Ms. Rodeman was also suspected of only a misdemeanor, the arrest transpired in a cramped bedroom, involved several warnings, and occurred after physical resistance from plaintiff's companion and plaintiff. Thus, as no precedent provided sufficient guidance to Sgt. Foster when confronting an actively resisting arrestee in her home, it would not have been clear to a reasonable officer that the use of a TASER here was unreasonable.

For these reasons, the Court concludes that Sgt. Foster did not violate plaintiff's constitutional right to be free from unreasonable seizure, and even assuming he had, the right was not clearly established at the time.

### C. State Tort Claims

Plaintiff asserts state law claims against Sgt. Foster for assault, battery, trespass, false arrest, and outrageous conduct. Plaintiff also asserts respondeat superior liability for the town of Oak Creek as to these claims. Defendants contend that these claims must be dismissed pursuant to the Colorado Governmental Immunity Act ("CGIA"), C.R.S. § 24-10-101 *et seq.*, which provides that public entities and employees are immune from torts unless the act or omission giving rise to liability was "willful and

wanton." C.R.S. § 24-10-105(1). The phrase "willful and wanton" is not defined in the CGIA, but has been read to require that the public employee "purposefully pursued a course of action or inaction that he or she considered would probably result in harm" to plaintiff. *See Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1141 (D. Colo. 2001) (construing controlling Colorado precedent).

Whether conduct was "willful and wanton" is generally determined at trial. *See Carothers v. Archuleta Cnty. Sheriff*, 159 P.3d 647, 650 (Colo. App. 2006). However, as the Court has found that Sgt. Foster employed only reasonable force in arresting plaintiff, no reasonable jury could find that Sgt. Foster acted willfully and wantonly in tasing her and defendants are entitled to summary judgment on plaintiff's assault and battery claims. As plaintiff cannot show Sgt. Foster acted willfully and wantonly regarding these claims, the town of Oak Creek also cannot be held vicariously liable for these alleged violations. On the other hand, due to the disputed facts remaining on plaintiff's illegal entry claim, plaintiff's claims for trespass, false arrest, and outrageous conduct must remain for jury resolution. A reasonable jury could find that Sgt. Foster willfully and wantonly violated plaintiff's rights by entering her home without probable cause.

## V. CONCLUSION

For the foregoing reasons it is

**ORDERED** that defendants' Motion for Summary Judgment [Docket No. 46] is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that summary judgment shall enter as to plaintiff's claims for excessive force in violation of the Fourth and Fourteenth Amendments and for assault and battery in violation of Colorado law.

DATED February 9, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge